UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YURI STAROSTENKO,
IRINA TSAREVA,

Plaintiffs,

Civ.19-cv-09993-KPF

-against-

UBS AG (A SWISS BANK) and
UBS (BAHAMAS) LTD (IN LIQUIDATION).

Defendants.

THIRD AMENDED COMPLAINT

Plaintiffs, Yuri Starostenko and Irina Tsareva (collectively, "Plaintiffs"), for their Complaint against Defendant UBS AG, together with numerous UBS' legal and non-legal entities such as UBS Group AG, UBS Group, UBS Investment Bank, UBS Wealth Management, UBS AG Zurich and individuals, Kyle Williams and LaNovia Ferguson, ("UBS AG"), and Defendant UBS (Bahamas) Ltd (In Voluntary Liquidation), together with individuals, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto and Renate Raeber ("UBS Bahamas") (collectively, "Defendants"), allege:

SUMMARY

1.  Plaintiffs bring this action as defrauded victims seeking recompense for their injuries resulting from UBS Bahamas' and UBS AG's fraud in the course of their business activities in the United States relating to trading in securities on New York's exchanges.

VIOLATIONS

2.  By virtue of the conduct alleged herein Defendants directly or indirectly, singly or in concert, knowingly or recklessly, have engaged in acts, practices, schemes and courses of business that constitute:

    2.1.  violation under Sections 10(b) (15 U.S.C. § 78j) and Section 20(a) of the Securities Exchange Act of 1934, Rule 10b–5(b) (17 C.F.R. § 240.10b-5(b)) and Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a));

    2.2.  commission of common law fraud under New York law;

1

2.3.     violations under Sections 1962 (18 U.S.C. § 1962(a)-(d)) and 1964 (18 U.S.C. § 1964(c)) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and

2.4.     violations under Sections 1 and 2 of the Sherman Act and Section 2 of the Clayton Act.

## JURISDICTION AND VENUE

3.     This Court may assert personal jurisdiction over all Defendants pursuant to:

3.1.     Sections 21D and 27 of the Securities Exchange Act of 1934;

3.2.     New York C.P.L.R. 302(a)(1);

3.3.     Sections 1964(c) and 1965 of the RICO; and

3.4.     Section 4 of the Sherman Act.

## PLAINTIFFS

4.     Plaintiffs, through Junkanoo Estates Ltd., a company incorporated under the laws of the Bahamas of which they were founders, owners, officers of and a single entity, were customers of UBS Bahamas active in American securities markets, from or for account of whom UBS Bahamas acted in the ordinary course of business as an introducing broker: (i)for safekeeping; (ii)with a view to sale; (iii)to cover consummated sales; (iv)pursuant to purchases; (v)as collateral under a security agreement for the purpose of purchasing and selling securities on national securities exchanges in the United States.

5.     Plaintiffs exercised full control over Junkanoo Estates Ltd. in U.S. domestic activities on New York's exchanges, including control of the securities trading in current account 32,377/01,00 of Junkanoo Estates Ltd. at UBS Bahamas ("account 32,377/01,00").

## DEFENDANTS

6.     UBS AG is a person other than a U.S. registered broker or dealer (FINRA's Rule 4311(a)(2), *infra*), a foreign bank, as defined in section 1(b)(7) of the International Banking Act (12 U.S.C. § 3101(7)), that controls a large complex financial organization that consists of a number of separate business lines and legal entities, including UBS Bahamas, in many countries around the world, including 270 subsidiaries in the United States, 22 of which are in the New York, with Guiness book of Record Trading Floor located in Stamford, Connecticut, the shares of which are publicly traded on the New York Stock Exchange.

7.   UBS Bahamas, a Bahamian off-shore subsidiary of UBS AG which directly owned 99,99999% of the outstanding voting shares of UBS Bahamas, was a person other than a U.S. registered broker or dealer (FINRA's Rule 4311(a)(2), *infra*), a foreign bank operating under an offshore banking license issued by the Commonwealth of the Bahamas (31 U.S.C. 5318(i)) the shares of which are not publicly traded, who served as an introducing broker whose customers are active in American securities markets.

8.   UBS AG and UBS Bahamas share the same name, UBS Bahamas was wholly owned by UBS AG, and UBS AG exercised such control over UBS Bahamas that the two entities were essentially one. The degree of dominion of UBS AG to control UBS Bahamas was such that all UBS Bahamas activities could be ascribed to UBS AG.

9.   UBS Bahamas was merely a facade for the brokerage services operations of UBS AG in the face of the Booking Center Bahamas, a nonentity of UBS AG (*see* Account maintenance, order placement & booking functions in this complaint).

10.  UBS Bahamas was the "alter-ego" or "instrumentality" of UBS AG, where "the separate corporate identities ... are a fiction and ... the subsidiary is, in fact, being operated as a department of the parent" and "where there is a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined" or "where a corporate parent exercises complete domination and control over its subsidiary" (*see* Account maintenance, order placement & booking functions in this complaint).

11.  UBS AG lent the prestige of its name to the products and services offered through UBS Bahamas, which acted on behalf of UBS AG in its brokerage operations only with the permission of UBS AG. All UBS Bahamas' documents included the genuine UBS logo.

12.  On March 19, 2015, UBS Bahamas was liquidated by passing a resolution of Beat Paoletto. Since then, UBS Bahamas has had no officers, directors or employees, or any property owned in whole or in part, directly or indirectly. John Murphy is counsel and the point of contact for both Defendants.

STATEMENT OF CLAIM

*FACTS:*

13.  All factual allegations contained in First Amended Complaint ("FAC") (Dkt. 31) and Second Amended Complaint ("SAC") (Dkt. 46) are re-alleged and incorporated by reference as if set forth fully herein.

14.     Plaintiffs re-allege and incorporate by reference as if set forth fully herein all factual allegations contained in the the Affidavit of Irina Tsareva sworn to the date of this Complaint (*see* Exhibit AT), which set forth repeated instances of intentional misrepresentations, concealment of material facts, deceptive and oppressive practices in which Defendants and their associates engaged.

15.     In October 2018, UBS Bahamas, by the use of email, disclosed to Plaintiffs an internal policing Dealing Procedure Manual UBS Capital Markets (CM) (Booking Center Bahamas) ("Procedure Manual") (*see* Exhibit DP), describing order placement and booking practices to be performed by UBS AG' Booking Center Bahamas through the services and facilities of UBS AG and individuals employed by UBS Bahamas such as Kevin Lee Price, Tibaud Halwyck, Fabian Jenny and Beat Paoletto, who performed or caused to perform the execution and settlement functions for all UBS Bahamas' account holders, including Plaintiffs.

16.     The Procedure Manual was referred to in the Affidavit of Renate Raeber ("First Affidavit") sworn to December 13, 2018 (*see* Exhibit R1, page15) and Fifth Affidavit of Renate Raeber sworn to March 7, 2019 ("Fifth Affidavit") (*see* Exhibit R5, page 17).

*10(b) Claim*

17.     In November 2018, by the use of email, UBS Bahamas disclosed to Plaintiffs 100 internal records, including: 51 "Contract Notes" and 51 "UBS (Bahamas) Ltd. Security Trial Contracts - OES" ("Internal Records") (*see* Exhibit IR) referred to in First Affidavit (*see* Exhibit R1, pages 48, 49) and Fifth Affidavit (*see* Exhibit R5, pages 50, 51), which contain untrue statements made by:

17.1.     UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of United States exchange-traded fund shares ("U.S. ETF shares") "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of New York Stock Exchange's Arca ("NYSE Group Inc.") for US$95,851.25 debited from the Plaintiffs' account 32,377/01,00 on June 13, 2013 (*see* Exhibit IR, TAB 1).

17.2.     UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 3,000 of U.S. ETF shares "BARCL IPATH ETN 19" were purchased on the Trading Place of National Association of Securities Dealers Automated Quotations System ("NASDAQ") for US$69,063.68 debited from the Plaintiffs' account 32,377/01,00 on June 24, 2013 (*see* Exhibit IR, TAB 2).

17.3.     UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,200 of U.S. ETF shares "DIREXION DL SC BL3X" were

purchased on the Trading Place of NYSE Group Inc. for US$54,844.33 debited from the Plaintiffs' account 32,377/01,00 on June 26, 2013 (*see* Exhibit IR, TAB 3).

17.4.    UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 3,000 of U.S. ETF shares "BARCL IPATH ETN 19" were SOLD on the Trading Place of NASDAQ for US$64,898.39 credited to the Plaintiffs' account 32,377/01,00 on June 26, 2013 (*see* Exhibit IR, TAB 3).

17.5.    UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$58,117.43 debited from the Plaintiffs' account 32,377/01,00 on July 16, 2013 (*see* Exhibit IR, TAB 4).

17.6.    UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$61,718.51 debited from the Plaintiffs' account 32,377/01,00 on July 19, 2013 (*see* Exhibit IR, TAB 5).

17.7.    UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "PR ULSH 20+Y TR ETF" were purchased on the Trading Place of NYSE Group Inc. for US$74,422.32 debited from the Plaintiffs' account 32,377/01,00 on July 23, 2013 (*see* Exhibit IR, TAB 6).

17.8.    UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$77,196.15 debited from the Plaintiffs' account 32,377/01,00 on July 25, 2013 (*see* Exhibit IR, TAB 7).

17.9.    UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$78,123.43 debited from the Plaintiffs' account 32,377/01,00 on July 25, 2013 (*see* Exhibit IR, TAB 7).

17.10.    UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for

US$73,722.11 debited from the Plaintiffs' account 32,377/01,00 on July 26, 2013 (*see* Exhibit IR, TAB 8).

17.11.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$74,241.27 debited from the Plaintiffs' account 32,377/01,00 on July 26, 2013 (*see* Exhibit IR, TAB 8).

17.12.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 500 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$39,981.99 debited from the Plaintiffs' account 32,377/01,00 on July 31, 2013 (*see* Exhibit IR, TAB 9).

17.13.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 5,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$35,490.64 debited from the Plaintiffs' account 32,377/01,00 on August 1, 2013 (*see* Exhibit IR, TAB 10).

17.14.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 500 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$40,579.17 debited from the Plaintiffs' account 32,377/01,00 on August 1, 2013 (*see* Exhibit IR, TAB 10).

17.15.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 500 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$40,946.28 debited from the Plaintiffs' account 32,377/01,00 on August 1, 2013 (*see* Exhibit IR, TAB 10).

17.16.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 5,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$34,360.30 debited from the Plaintiffs' account 32,377/01,00 on August 2, 2013 (*see* Exhibit IR, TAB 11).

17.17.   UBS Bahamas, Kyle Williams, UBS AG, UBS Wealth Management and UBS AG Zurich that 500 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$43,236.97

debited from the Plaintiffs' account 32,377/01,00 on August 2, 2013 (*see* Exhibit IR, TAB 11).

17.18.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$5,501.65 debited from the Plaintiffs' account 32,377/01,00 on August 6, 2013 (*see* Exhibit IR, TAB 12).

17.19.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$102,730.81 debited from the Plaintiffs' account 32,377/01,00 on August 6, 2013 (*see* Exhibit IR, TAB 12).

17.20.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$101,543.25 debited from the Plaintiffs' account 32,377/01,00 on August 6, 2013 (*see* Exhibit IR, TAB 12).

17.21.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$103,188.95 debited from the Plaintiffs' account 32,377/01,00 on August 7, 2013 (*see* Exhibit IR, TAB 13).

17.22.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$68,420.52 debited from the Plaintiffs' account 32,377/01,00 on August 9, 2013 (*see* Exhibit IR, TAB 14).

17.23.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$68,972.18 debited from the Plaintiffs' account 32,377/01,00 on August 9, 2013 (*see* Exhibit IR, TAB 14).

17.24.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for

US$64,873.76 debited from the Plaintiffs' account 32,377/01,00 on August 9, 2013 (*see* Exhibit IR, TAB 14).

17.25.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$77,323.19 debited from the Plaintiffs' account 32,377/01,00 on August 12, 2013 (*see* Exhibit IR, TAB 15).

17.26.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$77,322.94 debited from the Plaintiffs' account 32,377/01,00 on August 12, 2013 (*see* Exhibit IR, TAB 15).

17.27.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$82,581.27 debited from the Plaintiffs' account 32,377/01,00 on August 14, 2013 (*see* Exhibit IR, TAB 16).

17.28.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$82,624.78 debited from the Plaintiffs' account 32,377/01,00 on August 14, 2013 (*see* Exhibit IR, TAB 16).

17.29.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$83,024.90 debited from the Plaintiffs' account 32,377/01,00 on August 14, 2013 (*see* Exhibit IR, TAB 16).

17.30.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$82,581.27 debited from the Plaintiffs' account 32,377/01,00 on August 14, 2013 (*see* Exhibit IR, TAB 16).

17.31.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for

US$97,560.26 debited from the Plaintiffs' account 32,377/01,00 on August 16, 2013 (*see* Exhibit IR, TAB 17).

17.32.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$95,551.66 debited from the Plaintiffs' account 32,377/01,00 on August 16, 2013 (*see* Exhibit IR, TAB 17).

17.33.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$9,052.72 debited from the Plaintiffs' account 32,377/01,00 on August 19, 2013 (*see* Exhibit IR, TAB 18).

17.34.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 10,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$92,827.84 debited from the Plaintiffs' account 32,377/01,00 on August 19, 2013 (*see* Exhibit IR, TAB 18).

17.35.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,324 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were SOLD on the Trading Place of NYSE Group Inc. for US$126,010.31 credited to the Plaintiffs' account 32,377/01,00 on August 20, 2013 (*see* Exhibit IR, TAB 19).

17.36.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 400 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$38,411.52 debited from the Plaintiffs' account 32,377/01,00 on August 20, 2013 (*see* Exhibit IR, TAB 19).

17.37.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 100 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$9,727.92 debited from the Plaintiffs' account 32,377/01,00 on August 20, 2013 (*see* Exhibit IR, TAB 19).

17.38.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 100 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$9,702.91

debited from the Plaintiffs' account 32,377/01,00 on August 20, 2013 (*see* Exhibit IR, TAB 19).

17.39.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 100 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$9,690.91 debited from the Plaintiffs' account 32,377/01,00 on August 20, 2013 (*see* Exhibit IR, TAB 19).

17.40.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 500 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$47,476.24 debited from the Plaintiffs' account 32,377/01,00 on August 20, 2013 (*see* Exhibit IR, TAB 19).

17.41.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were SOLD on the Trading Place of NYSE Group Inc. for US$90,971.12 credited to the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.42.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were SOLD on the Trading Place of NYSE Group Inc. for US$90,841.16 credited to the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.43.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BR3X" were purchased on the Trading Place of NYSE Group Inc. for US$24,407.32 debited from the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.44.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US$91,137.33 debited from the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.45.  UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for

US\$91,801.53 debited from the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.46.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US\$93,667.09 debited from the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.47.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US\$93,027.90 debited from the Plaintiffs' account 32,377/01,00 on August 21, 2013 (*see* Exhibit IR, TAB 20).

17.48.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 2,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were SOLD on the Trading Place of NYSE Group Inc. for US\$191,052.58 credited to the Plaintiffs' account 32,377/01,00 on August 23, 2013 (*see* Exhibit IR, TAB 21).

17.49.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US\$96,344.64 debited from the Plaintiffs' account 32,377/01,00 on August 23, 2013 (*see* Exhibit IR, TAB 21).

17.50.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US\$96,616.98 debited from the Plaintiffs' account 32,377/01,00 on August 23, 2013 (*see* Exhibit IR, TAB 21).

17.51.   UBS Bahamas, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich that 1,000 of U.S. ETF shares "DRXN DLY GLDMN BL3X" were purchased on the Trading Place of NYSE Group Inc. for US\$95,028.50 debited from the Plaintiffs' account 32,377/01,00 on August 23, 2013 (*see* Exhibit IR, TAB 21).

*Connection with the purchases or sales of securities*

18. The fraud described above was in connection with the purchase or sale of securities even though securities were never purchased on Plaintiffs' behalf, because UBS Bahamas accepted and deposited Plaintiffs' monies as payments for these securities.

19. The fraud described above was integral to the purchases and sales of the U.S. ETF shares, because these acts were related directly to the execution of the trade orders for particular securities in particular transactions on particular American exchanges.

20. UBS Bahamas, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich had actual knowledge that: 1)the U.S. ETF shares mentioned above were not actually bought or sold for the Plaintiffs' account 32,377/01,00; 2)the statements contained in the Internal Records were untrue and intended them to be so; and 3)all "Contract Notes" and "UBS (Bahamas) Ltd. Security Trial Contracts - OES" were not authentic or false.

*Scienter*

21. UBS AG's Booking Center Bahamas and UBS Bahamas, by its actions intended to defraud Plaintiffs, engaged in fraudulent conduct, which was (1) directed at Plaintiffs (2) in order to induce them to purchase or sell securities on the U.S. national securities exchanges exclusively through UBS Bahamas, and (3) caused losses directly resulting from what Plaintiffs believed to be legitimate securities transactions.

22. UBS AG's Booking Center Bahamas and UBS Bahamas did not execute the Plaintiffs' trades and acted in the same way as UBS AG's trader of the London Branch, Mawuli Adoboli, who escaped the detection of UBS AG's risk-control systems from 2008 through 2011, when the Swiss and UK regulators' found in 2012 that UBS AG's risk management systems and controls were not fit for the purpose, creating an environment in which off-the-book positions could be concealed (*see* Exhibit ND).

23. The Swiss and UK regulators' investigations identified individuals and business units within UBS AG and misconduct (*see* Exhibits F1 through F17).

24. Material systemic procedures, management systems and internal controls' failures within UBS AG, identified by the Swiss and UK regulators in 2012, persisted for a significant and continuous period of time without correction.

25. UBS AG was unable to ensure transparency in the financial health of the business and the transactions between UBS AG and its customers, the accuracy of the corporate books and records and the reliability of the audit process which constitute a strong

inference that Kevin Lee Price, Tibaud Halwyck and Beat Paoletto of UBS Bahamas acted with a scienter.

26. UBS Bahamas joined by Kevin Lee Price, Tibaud Halwyck and Beat Paoletto participated in the fraudulent activities just like the London Branch of UBS AG in the period between 2008 and 2011, helping itself attract additional customers, including Plaintiffs, by willfully defrauding them in order to collect fees and misappropriate $729,749, and, ultimately, obtain possession of the Plaintiffs' dwelling house.

27. Between April 16 and May 8, 2019, Plaintiffs delivered letters of requests to be aware of the violations to Sergio Ermotti, Thomas Schneider, Jonathan Bourne, Isabelle Romy, Beatrice Weder di Mauro, Urs Kaegi and Tom Naratil (see Exhibit UP).

*Common law fraud claim*

28. UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich through their agent(s), a U.S. registered broker(s) or dealer(s) that processed Plaintiffs' U.S. domestic trades, it transacted business on New York's securities exchanges that is substantially related to this claim.

29. UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich committed tortious acts in New York by entering fraudulent transactions in New York designed to manipulate the Plaintiffs' account 32,377/01,00 balances, UBS Bahamas' and UBS AG's books and records in order to defraud Plaintiffs out of the quintessential tangible form of property, their monies.

30. The untrue statements described above were material because they were inconsistent with the true statement of facts, and, if they were accurate, they could have contained confirmations issued by U.S. registered brokers or dealers that processed the Plaintiffs' trades in the U.S. ETF shares through NYSE Group Inc. and NASDAQ, *see infra*.

31. UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich disseminated the untrue statements described above to Plaintiffs with the intent to deceive and mislead them.

32. UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich knew that the Internal Records were false and intended them to be so that would allow

UBS Bahamas in order to create a debt, which otherwise would not exist, and to misappropriate the Plaintiffs' monies.

33.   Plaintiffs accepted and relied upon the untrue statements described above and assented to the amounts debited to the account 32,377/01,00 on the books of UBS Bahamas applied to the U.S. ETF shares' transactions without knowing that securities were never purchased on Plaintiffs' behalf, and such reliance caused Plaintiffs to have suffered losses directly resulting from what they believed to be legitimate securities transactions.

34.   Plaintiffs were induced by the untrue statements described above to agree with the amounts debited from the Plaintiffs' account 32,377/01,00 they would otherwise disagree, including:

34.1.   payments for the U.S ETF shares which were never purchased on Plaintiffs' behalf;

34.2.   interest payments over the period from September 28, 2012 through April 11, 2014 the UBS Bahamas' loan to Junkanoo Estates Ltd. remained in effect; and

34.3.   payments for the brokerage and transaction fees.

35.   In total, UBS Bahamas' fraud had cost Plaintiffs about US$204,425.51 representing the difference between the account 32,377/01,00 balance as of September 28, 2012 (US$729,749.00) and the account 32,377/01,00 balance as of April 11, 2014 (US$525,323.49) the UBS Bahamas' loan to Junkanoo Estates Ltd. remained in effect.

36.   Moreover, Plaintiffs' U.S. domestic injury consists of loss of time expended in connection with their operations for the purchases and sales of the U.S. ETF shares in the United States, loss of capital, loss of interest on the assets, loss of investment opportunity resulting from UBS Bahamas' conduct in the course of the scheme.

*RICO Claim*

37.   In March 2019, Plaintiffs had received a copy of Fifth Affidavit of Renate Raeber, the former Head of Business Management with UBS Bahamas, which reads in paragraph 8: "As it relates to Schedule 1 of Exhibit RR-5, to the best of my knowledge, information and belief, UBS has produced all of the contract notes, trade advices and trade receipts in its possession. UBS does not have any other contract notes in its possession, other than what has already been produced" (*see* Exhibit R5, page 2).

38.   Plaintiffs did not received inquiry notice nor learned the facts needed to constitute violations under the RICO and their U.S domestic injuries suffered therefrom until upon an examination of the Internal Records, Procedure Manual and Fifth Affidavit, Plaintiffs

have discovered the fraud to cover the misappropriations of the Plaintiffs' funds in connection with the purchases and sales of securities, masking harm to Plaintiffs by the use of sophisticated means, including the concealment of assets or transactions through the use of fictitious bank or accounting records even though securities were never purchased on his behalf.

39.    Between UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich existed a corrupt agreement to manipulate the Plaintiffs' account 32,377/01,00 balances and UBS Bahamas' books and records.

40.    UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich agreed to join and participate in the fraud, having full control and last word in decisions over UBS AG' Booking Center Bahamas and UBS Bahamas regarding their business activities on New York's securities exchanges, knowingly participated in the agreement and assisted in its implementation, and thus intentionally participated in the common plan to defraud with knowledge that the account 32,377/01,00 balances and UBS Bahamas' books and records were false. UBS Bahamas fraudulently accepted payments for securities that it never intended to purchase and deliver to Plaintiffs.

41.    UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich have concealed the fraud or committed it in a manner that it concealed itself in order to defraud investors on an international level, including Plaintiffs, the United States government agencies and regulators, the Securities Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), National Securities Clearing Corporation ("NSCC"), Depository Trust Company ("DTC") of the Depository Trust & Clearing Corporation ("DTCC"), and the like, and frustrate the Plaintiffs' ability to plead that fraud.

42.    UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich fabricated false securities transactions and generated paperwork, created and caused the creation of false trades, books and records to disguise the true nature of payments using funds from the account 32,377/01,00 and to withhold Plaintiffs' monies held in that account as payments for the U.S. ETF shares in the sham transactions.

43.    In furtherance of that agreement UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny and Beat Paoletto 1)refused to execute Plaintiffs' trade orders on New York's securities exchanges; 2)manipulated the account 32,377/01,00 balances and

UBS Bahamas' books and records; and 3)debited amounts from the Plaintiffs' account 32,377/01,00 even though securities were never purchased on Plaintiffs' behalf.

44.   Moreover, UBS Bahamas took affirmative steps beyond its conduct in the course of the fraud to conceal it from Plaintiffs and to prevent Plaintiffs' discovery of both their claim and injury by disclosing to them only in October-November 2018 the Internal Records.

45.   Plaintiffs remained in ignorance of both the fraud and injury without any fault or want of diligence or care on their part because UBS Bahamas had engaged in conduct that was inherently self-concealing by passing off the sham transactions as those that are genuine.

*Domestic injury*

46.   Plaintiffs' injury was domestic because they purchased, owned and transferred both the value of and control over the U.S. ETF shares in the United States and relinquished control of the monies in the account 32,377/01,00 paid to UBS Bahamas as operating losses in the United States, expenses and losses incurred in their operations for the purchases and sales of the U.S. ETF shares, under false pretenses in the United States, and thereby suffered the injury in the United States resulting from UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich's conduct in the course of the fraud.

47.   Plaintiffs had done so through domestic agents, U.S. registered brokers or dealers, members of the FINRA, that processed Plaintiffs' U.S. domestic trades, the carrying firms acted on the basis of agreements for the carrying of the customer account(s) of UBS Bahamas, as a person other than a U.S. registered broker or dealer, entered into with UBS Bahamas directly or indirectly through an introducing firm(s) that acted as an intermediary for UBS Bahamas for the purpose of obtaining clearing services from the currying firms, identifying, binding every direct and indirect recipient of clearing services as a party thereto and specifying the responsibilities of each party, including the allocation of the following responsibilities: (A)opening and approving accounts; (B)acceptance of orders; (C)transmission of orders for execution; (D)execution of orders; (E)extension of credit; (F)receipt and delivery of funds and securities; (G)preparation and transmission of confirmations; (H)maintenance of books and records; and (I)monitoring of accounts (FINRA's Rule 4311, (former NYSE Rule 382 and NASD Rule 3230)).

48.   Both the NYSE Group Inc. and NASDAQ are located in the United States, all the carrying firms are based in the United States and all 204 transactions in the U.S. ETF

shares were linked to the United States by processing those transactions through the Trading Places of NYSE Group Inc. and NASDAQ.

49.   UBS Bahamas was a primary actor in causing Plaintiffs to execute these transactions in the U.S. ETF shares on New York's NYSE Group Inc. and NASDAQ engaged in purposeful activities in New York to solicit and execute Plaintiffs' domestic trades. The purpose of UBS Bahamas was to obtain clearing services from the currying firms and render them to its customers, including Plaintiffs.

50.   UBS Bahamas benefitted from these transactions and activities in New York because they were meant to further the overall fraud.

51.   UBS Bahamas knew of and consented to these activities on the NYSE Group Inc. and NASDAQ, because they caused Plaintiffs to purchase, hold and sell the U.S. ETF shares positions.

52.   UBS Bahamas had not used any wherewithal apart from Plaintiffs, as demonstrated by (1) Plaintiffs' personally signing and entering into the agreements with UBS Bahamas to buy or sell securities on the U.S. national securities exchanges, *supra*, and (2) UBS Bahamas' requirement that Plaintiffs each personally guarantee the loan, *supra*.

53.   UBS Bahamas exercised full control over all Plaintiffs' domestic trades in the U.S. ETF shares in New York, because it was a party of agreements for the carrying of its customer account(s) entered into for the purpose of obtaining clearing services from the currying firm(s), *supra*.

54.   The UBS Bahamas' business activities occurred in New York while UBS Bahamas was located in the Bahamas, outside of the territorial limits of the United States, however the UBS Bahamas' fraudulent conduct occurred in the United States because: 1)Plaintiffs traded on the U.S. national securities exchanges; 2)the currying firms were paid in the United States currency and are subject to the tax laws of the United States; 3)the UBS Bahamas' fraud affected U.S. domestic commerce because Plaintiffs held assets and maintained operations — the purchases and sales of the U.S. ETF shares — in the U.S. domestic securities market.

55.   Additionally, UBS Bahamas defrauded investors and market participants from whom having benefited from the real-time reporting of trades and quotes for the U.S. ETF shares transactions described above on the Consolidated Tape for the U.S. equities market, because Plaintiffs' offers to buy the U.S. ETF shares never reached the U.S. equity market and all those who wanted to sell that the U.S. ETF shares at prices so

offered were unable to do that at values not affected by non-delivery of the Plaintiffs'
purchase price money to the U.S. equity market.

56.     Another example of effects in the United States is the interference with the collection of
        public revenues, which constitute a threat to the effectiveness of the Government in that
        the United States did not collect a cent of the taxes imposed on commission income,
        which was to be earned by the U.S. registered broker(s) or dealer(s) that processed
        Plaintiffs' U.S. domestic trades, the carrying firm(s), *supra*.

*Antitrust claim*

57.     UBS Bahamas and UBS AG would have every incentive to maintain non-existing or
        artificial prices of shares in securities transactions by making false statements in order to
        create a debt, which otherwise would not exist, *supra*.

58.     The domestic injury Plaintiffs suffered from the conspiracy in restraint of trade, referred
        to *infra* as corrupt agreement, to shut out of competition on the U.S. equity markets for
        anticompetitive reasons, had the anticompetitive effect of anticompetitive acts of
        Defendants made possible by the violation of antitrust laws, that produced loss.

59.     UBS Bahamas and UBS AG agreed, combined, and conspired and intentionally sought
        to negate, and did negate, price competition in trades, transactions or positions in equity
        securities publicly traded on national securities exchanges ordered by Plaintiffs, wilfully,
        not sending or routing and not representing, handling, executing, clearing, or not carrying
        the transactions openly and competitively by any open and competitive methods
        adopted in trading places or prescribed by relevant market for trading.

60.     This practice was effective where UBS Bahamas and UBS AG with large
        money-market desks were involved because it could easily move cash prices and affect
        the market for such security it would lawfully submit the said customers' orders to the
        relevant exchange. There was a years-long conspiracy to indirectly manipulate the
        securities prices, where the misconduct occurred on a daily basis.

61.     Management at UBS Bahamas and UBS AG agreed and facilitated their employees'
        activities by making structural changes to their money markets and derivatives desks
        that allowed for collusion, implemented lax compliance standards that failed to detect
        misconduct, and concealed evidence from regulators. As an example, the UBS
        Bahamas and UBS AG did not maintain records which employees accepted and
        handled the said customers' orders and did not train employees on the methodologies
        used for handling or making submissions of customers orders for transactions in
        instruments traded on public exchanges.

*The marketplace consequences that flow from the violation*

62.     UBS Bahamas and UBS AG by unlawfully not sending or routing to and not representing or executing Plaintiffs' orders on national securities exchanges indirectly manipulated price levels of the relevant equity security market by corrupting the result of the price discovery; and prices of the relevant securities were artificial not being the result of ordinary market process of competion of quotes to buy and sell.

63.     The said indirect manipulation of security prices created artificial, false or misleading appearances with respect to the price of an equity security, subject of unexecuted orders, or the market for such a security, the widespread last sale and quotation information with respect to which was not reliable and accurate.

64.     As a result of the said manipulative or deceptive activities of UBS Bahamas and UBS AG, quotations for such securities were false and last sale information available to investors and regulators against the public interest and inappropriate for the protection of investors and the maintenance of fair and orderly markets.

65.     Automated quotation systems operated by the relevant registered securities association or national securities exchanges in accordance with rules prescribed by the SEC, at the instances of the said unrepresented or unexecuted orders: 1)collected and disseminated real-time quotation and transaction information which were misleading; 2)provided misleading bid and ask real-time quotations of participating brokers or dealers, which constituted UBS Securities' or UBS FS' bids or offers; and 3)provided the volume and the last sale reportings of transactions, subjects of the said unexecuted orders, which were misleading.

66.     As a result, investors and market participants were unable to meet their information needs, deprived of the visibility of all orders to buy or sell an equity security at the instances of the said unexecuted orders.

## FIRST CLAIM FOR RELIEF

Violation under Section 10(b) (15 U.S.C. 78j) of the Securities Exchange Act of 1934, Rule 10b–5(b) (17 C.F.R. § 240.10b-5(b)) and Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a))

67.     Paragraphs 1 through 145 are re-alleged and incorporated by reference as if set forth fully therein.

68.     Renate Raeber, UBS Bahamas, Kyle Williams, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich, directly or indirectly, singly or in concert,

knowingly or recklessly, by the use of means or instrumentality of interstate commerce, and facilities of national securities exchanges, made untrue statements of material facts in connection with the purchases or sales of securities; and their conduct caused domestic injury that produced loss or damage to Plaintiffs.

69. As described in the paragraphs above, Renate Raeber, UBS Bahamas, Kyle Williams, LaNovia Ferguson, UBS AG and UBS Wealth Management violated Section 10(b) (15 U.S.C. 78j) of the Securities Exchange Act of 1934, Rule 10b–5(b) (17 C.F.R. § 240.10b-5(b)) and Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)),

70. By virtue of violative conduct alleged herein, Plaintiffs are entitled to judgment on their first claim for relief.

## SECOND CLAIM FOR RELIEF

### Commission of common law fraud under New York law

71. Paragraphs 1 through 145 are re-alleged and incorporated by reference as if set forth fully therein.

72. Renate Raeber, UBS Bahamas, Kyle Williams, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich, directly or indirectly, singly or in concert, knowingly or recklessly, made untrue statements of material facts, and their conduct caused domestic injury that produced loss or damage to Plaintiffs in New York.

73. As described in the paragraphs above, Renate Raeber, UBS Bahamas, Kyle Williams, LaNovia Ferguson, UBS AG and UBS Wealth Management violated antifraud provisions of New York law.

74. By virtue of fraudulent conduct alleged herein, Plaintiffs are entitled to judgment on their second claim for relief.

## THIRD CLAIM FOR RELIEF

### Violations under Sections 1962 (18 U.S.C. § 1962(a)-(d)) and 1964 (18 U.S.C. § 1964(c)) of the Racketeer Influenced and Corrupt Organizations Act ("RICO")

75. Paragraphs 1 through 145 are re-alleged and incorporated by reference as if set forth fully therein.

76. UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich entered a corrupt agreement to defraud Plaintiffs through false pretenses in the

United States; and their conduct caused domestic injury injury to Plaintiffs' business or property that produced loss or damage in the United States.

77. As described in the paragraphs above, UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich violated Sections 1962 (18 U.S.C. § 1962(a)-(d)) and 1964 (18 U.S.C. § 1964(c)) of the RICO.

78. By virtue of violative conduct alleged herein, Plaintiffs are entitled to judgment on their third claim for relief.

## FOURTH CLAIM FOR RELIEF

### Violation under Section 1 of the Sherman Act (15 U.S.C. § 1)

79. Paragraphs 1 through 145 are re-alleged and incorporated by reference as if set forth fully therein.

80. UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, UBS Wealth Management and UBS AG Zurich entered a conspiracy in restraint of trade to shut out of competition on the U.S. equity markets for anticompetitive reasons; and their conduct caused antitrust injury to Plaintiffs' business or property that produced loss or damage.

81. As described in the paragraphs above, UBS Bahamas, Kevin Lee Price, Tibaud Halwyck, Fabian Jenny, Beat Paoletto, Kyle Williams, LaNovia Ferguson, UBS AG, Wealth Management and UBS AG Zurich violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

82. By virtue of violative conduct alleged herein, Plaintiffs are entitled to judgment on their fourth claim for relief.

## FIFTH CLAIM FOR RELIEF

### Violation under Section 20(a) of the Securities Exchange Act of 1934

83. Paragraphs 1 through 145 are re-alleged and incorporated by reference as if set forth fully therein.

84. UBS AG, UBS Wealth Management and UBS Investment Bank joined the fraud from the outset and had full control, and last word in decisions over both the UBS AG's Booking Center Bahamas and UBS Bahamas the conduct of which caused injuries to Plaintiffs' business or property that produced loss or damage.

85.   As described in the paragraphs above, UBS AG, UBS Wealth Management and UBS Investment Bank violated Section 20(a) of the Securities Exchange Act of 1934.

86.   By virtue of violative conduct alleged herein, Plaintiffs are entitled to judgment on their fifth claim for relief.

## IV. RELIEF

87.   WHEREFORE, the plaintiffs respectfully request that this Court, and grand the following relief:

    87.1.   (a) Final Judgment in favor of Plaintiffs finding that the defendant violated the securities laws and rules promulgated thereunder as alleged herein and directing the defendants to pay damages;

    87.2.   (e) Such other and further relief as this Court may deem just and appropriate, including punitive damages.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the Complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: February 28, 2022.

Respectfully submitted,

_____      _____
        Plaintiff                                  Plaintiff