UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YURI STAROSTENKO,
IRINA TSAREVA,

         Plaintiffs,

                   Civ.19-cv-09993-KPF

 -against-

UBS AG (A SWISS BANK) and
UBS (BAHAMAS) LTD (IN LIQUIDATION).

         Defendants.

AFFIDAVIT OF IRINA TSAREVA
EXHIBIT IT TO THIRD AMENDED COMPLAINT (DKT. 109)

I, Irina Tsareva, of the Western District of the New Providence Island, one of the Islands of the Commonwealth of The Bahamas, state under penalty of perjury the following:

I am one of the above-named Plaintiffs *pro se* in the above-captioned action. As such, I have personal knowledge of the matters set forth herein.

I submit this affidavit in support of Plaintiffs' Third Amended Complaint (Dkt. 109).

SUMMARY

- Introduction                Page 2 - 3 Paragraphs 1-8
- Description of the UBS fraudulent and manipulative
  Scheme in the U.S. Equity Market (the Fraud)   Page 3   Paragraphs 9
- Consequences to the public of the Fraud     Page 3 - 4 Paragraphs 10-12
- Persons involved in the Fraud          Page 4 - 5 Paragraphs 13
- Discovery of Fraud              Page 5-10 Paragraphs 14-38
- Facts of intentional misrepresentation, concealment and oppression precedent the discovery of the Fraud            Page 11-16  Paragraphs 39-72
- Conclusions                 Page 16

1

INTRODUCTION

1. I am an Italian citizen born in the USSR and a permanent resident in the Bahamas, without rights to engage in any gainful activity locally. Together with my husband, Yuri Starosteko (collectively the "YIS"), we are traders in securities, and parents of six children residing on New Providence Island, The Bahamas; address for service by hand: c/o Priderock Corporate Centre, 11 East Street & Bay Street, City of Nassau, the Bahamas; Phone#: 1(242)817-4372; email: starostenkovubsag@gmail.com

2. I have not necessarily included in the affidavit each and every fact known to me about the matters set forth herein, but only those facts and circumstances that I believe are sufficient to establish probable cause for the Court to consider to make steps necessary to protect residents of New York and US and all market participants from overseas fraud and ensuring the integrity of the commodities markets and to halt an ongoing fraud scheme (SAC ¶¶ 105-108).

3. This Affidavit also is in support of our Third Amendment Complaint (TAC), and to show to the court that the Defendant took affirmative steps to prevent the plaintiff's discovery of his claim, intentionally injured the Plaintiff in an attempt to prevent the Plaintiff to conduct this litigation and that the wrong itself was of such a nature as to be self-concealing.

4. The statements contained in this affidavit are based upon my experience as a trader, client of UBS since 2008, with information obtained during the meetings and email exchanges with UBS' officers.

5. Some dates, times, and amounts stated herein are approximate, due to suffering a homeless situation since 27 February 2018, created by UBS intentionally and to the UBS' partial disclosure during the litigation in the Bahamas, omitting the whole correspondence and names of the UBS officers in the UBS AMericas (US) who we were told were supervising our claims. But those facts could be reasonably added during the discovery stage.

6. This affidavit is made without legal advice, since this litigation left us financially disabled, considering the volume of the litigation lawyers cannot accept it on contingency basis and the court has not granted Plaintiffs' application for pro bono counsel at this stage (Dkt 108 ).

7. Certain names of UBS' officers coordinating the scheme from the US still have been concealed.

8. All facts in the TAC are repeated here in order to add weight to the credibility to the TAC, since we are aware that this scheme was never decided before in any court and the volume is such as to be a "massive fraude, Madoff size" , as one of many lawyers I have contacted stated,  or another one at  Shepherd Smith Edwards & Kantas, LLP ,  who preferred his name not to be used, stated : "I cant believe that UBS has not sent orders to NYSE, this would be massive fraud ".

### DESCRIPTION OF THE UBS FRAUDULENT AND MANIPULATIVE SCHEME ON THE U.S. EQUITY MARKET (the fraud)

9. It is routinely reported by brokers that between 60-90% of retail investors are losing money. By not sending orders to the US exchanges UBS has created an additional risk-free profit for itself - when the client's trade loses, this loss becomes profit of the UBS. UBS then creates fictitious trade reports pretending that trades were sent to the regulated exchange but without providing any reference number from  Exchanges, Clearing house, US broker of reference. This scheme was operated in old times by some NYC brokers, and was expressed in such terms - "if you win we will pay you out of the pocket but when you lose this is mine".

### CONSEQUENCES TO THE PUBLIC OF THE SCHEME

10. The consequences of the Scheme are detailed in the First Amended Complaint (FAC) in   Paragraphs 295-309 (Dkt 31). Briefly detailed here below.

11. By unlawfully not sending or routing orders on national securities exchanges UBS:

    11.1.  indirectly manipulated price levels of the relevant equity security market by corrupting the result of the price discovery;

    11.2.  was able to influence market prices;

    11.3.  caused artificial prices of the relevant securities.

12. The consequences of the manipulative and fraudulent UBS activities caused, among others:

12.1. investors and market participants were unable to meet their information needs;

12.2. the NYSE market data disseminated to data consumers, at the instances of the said unrepresented or unexecuted orders, was misleading;

12.3. market volatility was affected, the liquidity available in a market lowed ;

12.4. impacted on the normal operations of the market, contrary to the public interest and the maintenance of fair and orderly markets;

12.5. Caused loss of thousands of jobs and revenues in NYC, which according to the study of 2004 about the eventual halt of HFT through imposing of STT - "if reinstatement of the STT resulted in 10% decline in trading volume in New York City, the securities industry would shed 10,000 to 11,000 jobs." (*see* page 4 Exhibit ST)  In the paper "The Stock Transfer Tax and New York City: Potential Employment Effects" by Jonathan A. Schwabish for Partnership for New York City ISSUE BRIEF, December 2004 Microsoft Word - STT paper - December.doc (pfnyc.org)

According to the increased market volume since 2004, the number of lost jobs increased, as in-Proposed Civil Complaint - NYC FCA Corporate Counsel  (*see* Exhibit PC)

PERSONS INVOLVED IN THE FRAUD

13. Persons at Defendant named in Original Complaint (OP) not added as new defendants following the Court order (Dkt. 108):

13.1. Kevin Lee Price, the Investment Portfolio Supervision (IPS) Head Nassau and an employee of UBS Financial Services, Inc., UBS AG's related U.S.-facing company (*see* OP Exhibit KP), FINRA registered, a U.S. citizen;

13.2. Tibaud Halwyck, Head of Capital Markets in Nassau, Head of Capital Markets, allegedly a US company, located in  Nassau, introduced as UBS' trader, a citizen of Belgium and a resident of the Bahamas;

13.3. Beat Paoletto, President & CEO of UBS Bahamas a member of UBS AG, former senior employees of UBS Bahamas, joined UBS Bahamas in furtherance of the Fraud, infra. Swiss citizen, Swiss resident;

13.4. Fabian Jenny, introduced as Senior Manager at UBS Bahamas, the operative decisions responsible then, Swiss citizen, Swiss resident;

13.5. Sasha Savic, UBS Chief of Staff Latin America & Caribbean then, presumably a U.S. citizen, U.S. resident;

13.6. Kyle Williams ("UBS AG") presumably a Swiss citizen, Swiss resident;

13.7. LaNovia Ferguson ("UBS AG") presumably a Swiss citizen, Swiss resident;

13.8. Feder Kathryn from UBS NYC who coordinated UBS Bahamas decisions. presumably a citizen of Canada, Canada resident;

13.9. Sergio Ermotti, UBS AG's CEO then, a Swiss citizen, Swiss resident;

13.10. Thomas Schneider ex Ernst & Young 2019-04-17 UBS Chairman of the Board of Directors presumably a Swiss citizen, Swiss resident;

13.11. Jonathan Bourne ex Ernst & Young, presumably a UK citizen, UK resident;

13.12. Isabelle Romy (UBS) Member of the Board of Directors of UBS, presumably a Swiss citizen, Swiss resident;

13.13. Beatrice Weder di Mauro (UBS) Member of the Board of Directors of UBS Group AG and UBS AG, presumably a Swiss citizen, Swiss resident;

13.14. Urs Kaegi (Bär & Karrer AG) lead external legal advisor then, a Swiss citizen, Swiss resident;

13.15. Tom Naratil (UBS) president of UBS Wealth Management Americas and UBS Americas then; presumably a U.S. citizen, U.S. resident

### DISCOVERY OF FRAUD

14. After our unsuccessful contract with UBS, subject of the litigation in the Bahamas and not this litigation and described in the Brief addressing Bahamas action B.A.B.A (Dkt29 ), instead of refunding us and satisfying our just expectations, it filed an action against us and in October 2014, we filed a counterclaim action in September 2015. In May 2016 UBS suddenly moved in an attempt to enforce that interlocutory order for possession of residential land, our home, in a summary judgment proceedings, as is explained here below in the following paragraph. We rushed to file an injunction and in the Supreme Court Building, met Marco

5

Turnquest (MT) from Lennox Patton firm (LPT) exiting the judge's chambers. I approached him close to the lift and asked:

-"Marco, why do you want to throw us out of the house? You know, we do not have anywhere to go, we can't work here, we do not have money to trade, we have children. What is your problem? The house value is $4mln, you say we owe to the bank $1mln, we are saying that the bank owes us much more, why not to go on trial, especially since the Court of Appeal awarded you such high costs, you will be a millionaire by the end".

15. MTs reply was : "Your multi-million claim to the bank is like for me to have a Porsche, it can't be, and I can't let you go, no, no, you will file a U.S. claim then".

16. I told him that we don't see how we can file any U.S. claim and that our main interest was to settle and to live normally. He left.

17. After we applied to the Privy Council and our case returned to the Bahamas, we obtained a leave to appeal from the Judge in the Supreme Court in December 2017. But on 27 February 2018, while we were awaiting to be heard in the Court of Appeal and again in the Privy Council, UBS' enforced a not-stayed interlocutory order and took possession of our home with use of violence against our sons, minors then.

18. The eviction was another tool used against us in order to demoralize, to disturb our state of mind in the attempt to prevent us from conducting litigation against UBS and eventually discovering fraud. A number of cruelties were performed on us, such as :

   18.1. during the eviction two of our sons were physically abused;

   18.2. we were thrown out at 5 pm, in two hours from the house where we lived for ten years and we were ordered to take only what is necessary for the first night with a promise to return on the next day;

   18.3. the next day we were advised by Mr. Knowels, Lyford Cay Security officer, that UBS had denied access to and will contact us. Two weeks later, on 9 and 19 March 2018, we received the letter from Chizelle Cargill (CC), second lawyer from LPT staying that we can access our belongings only for two hours and after signing a waiver (*see* Exhibit CH email chain on 2-22 March 2018) ;

18.4.    we had first access to our belongings only in May 2018. Our sons were deprived of the opportunity of normal study, our piano and furniture has not been returned to us since then, which is always made with the same intention further to oppress us.

19. Since the eviction we have changed ten houses and some documents are hard to produce, since our belongings are in five different places. UBS now claims to have spent an exuberant amount of about $5,000 monthly to maintain our home. This illogical behavior can find its ground in only one possible scenario - UBS and its lawyers in the Bahamas are desperate to cover the fraud and are ready to take any steps.

20. The court proceedings went on in its path. Only in July 2018 we had our date in the court and case management conference took place before Justice Ian Winder in the Supreme Court of the Bahamas.

21. We continued to make countless requests for - Confirmations of Order Processings by a U.S. registered broker (COP). After filing a writ of summons against UBS in September 2015 in the Supreme Court of the Bahamas, we demanded nine times:

   21.1.    15 December 2017;

   21.2.    27 December 2017;

   21.3.    7 March 2018;

   21.4.    16 May 2018;

   21.5.    5 June 2018;

   21.6.    11 June 2018;

   21.7.    12 June 2018;

   21.8.    22 June 2018

   21.9.    6 July 2018.

22. UBS did not produce COP.

23. The Discovery ordered by Justice Ian Winder in the Supreme Court of the Bahamas was due on 30 August 2018. But UBS' sent electronic links that did not work and only on 2 October 2018 in her email CC sent working links, adding "If

7

you still require hard copies of the documents, the cost will be $324 (.50cents per page/ 648 pages)."(*see* Exhibit CD);

24. This was a malice intent to prevent YIS from eventual discovery of the concealed fraud, and considering that UBS now has moved to dismiss the claim as time barred, that behavior was a planned delay. UBS and its attorneys knew very well that YIS was struggling to have a roof and food, and any payment presents itself as astronomical and unaffordable.

25. In the Disclosure bundle there were the same Trade confirmations but not COP.

26. There were also Custodian Instructions, where UBS AG was indicated as custodian. The Court hearing was scheduled for November and UBS lawyers advised that there will be supplemental disclosure.

27. It was beyond our imaginations at that time, being depressed and already homeless, that UBS would not produce any COP. It is obvious now that these delays were created with accurate and repetitive actions in order to prevent YIS from filing the claim in the United States.

28. On 7 November 2018 UBS produced 'Supplemental List of Documents". Among the documents we found UBS minutes of 18 March 2014 (*see* Exhibit MI). The one sided record of the meeting was the main concern to us then, but at the end of document in the tab Conclusion it says: "Action -Trade confirmation to client

By whom - Legal to sign off "

In 2018 we were devastated by the day-to-day survival and were simply surprised that the legal office had 'to sign off'. Today it is clear that UBS was well aware about the size of the fraud it was performing and the immediate consequences it would face once the issue would be brought before the Court in the United States.

29. In November 2018, by the use of email, UBS Bahamas disclosed to Plaintiffs 100 internal records, including: 50 "Contract Notes" and 50 "UBS (Bahamas) Ltd. Security Trial Contracts - OES" ("Internal Records") (*see TAC* Exhibit IR to the ) referred to in First Affidavit (*see* TAC Exhibit R1, pages 48, 49) and Fifth Affidavit (*see* TAC Exhibit R5, pages 50, 51)

30. During the hearing in November 2018 asked before the judge that UBS must produce COP. Instead of producing COP, UBS came to the hearing with a surprise application for sale of our home under the order 31 (to cover costs) at $1,000,000.00, while the house appraised value was $3,684,000.00 in December 2017 and the prices of the real estates are in steady growing, especially in the

world famous gated community, Lyford Cay.  If successful this would leave us without money and by application for securities for costs they would throw us out of litigators seats. Judge ordered the UBS to produce requested documents and appointed the next hearing in January 2019.

31. The urge of UBS' to close the litigation, to not allow us to be heard could not be explained by only greed of its officers - John Delaney, the UBS Bahamas liquidator is also a real estate owner, but a desire to cover its own wrongdoings, especially the Fraud.

32.  On 13 December 2018 UBS submitted us with the 'Second Supplemental List of documents'. There was no COP.

    32.1. In that bundle we found a Memorandum of 13 January 2014 (*see* Exhibit ME), where there was not one word about COP. But the vexation description of our claim mentioned that the futures trade was denied on the ground that "credit request for margin would not be approved" which is self-absurd, since at the same time we were invited to invest in some UBS' products or trade stocks or ETFs. The reason is that futures trading is completely automatic, and there is no two-days settling period, consequently the Fraud could not exist.

33. There were two more hearings for the application for sale - January 2019 and February 2019, when the judge stayed the sale. On each hearing we asked the judge to please order the production of COP and to satisfy our nine requests from before. We explained to the judge that absence of these documents will give cause of action for the anti-fraud case in the United States. After UBS' attorneys said that they produced all that was in their clients possession and have no other documents, the Judge Ian Winder said:  "I will make the order that your client produce an affidavit in very term that you're representing to me now."

34. Following The Judge Ian Winder order  on March 2019, we received a copy of Fifth Affidavit of Renate Raeber, the former Head of Business Management with UBS Bahamas, which reads in paragraph 8: "As it relates to Schedule 1 of Exhibit RR-5, to the best of my knowledge, information and belief, UBS has produced all of the contract notes, trade advices and trade receipts in its possession. UBS does not have any other contract notes in its possession, other than what has already been produced" (*see* TAC Exhibit R5, page 2).

35. In the same Fifth Affidavit there was the Third Supplemental List of Documents we also found email from Kathryne Feder, presumably a Canadian citizen and

    resident who was working at UBS. But as for today we do not know where exactly UBS Americas is located, who was the person who, according to what GM and TB told us, coordinated their activity with UBS Americas, located in NYC.

36. This was a clear confirmation that UBS indeed had committed this inimaginable fraud, that the Fraud actually exists and we thought that once brought before the highest officers and supervisors of the UBS the proper action will take place.

37. Between April 16 and May 7, 2019, SYI delivered letters of requests to the all UBS' persons whom we understood was in power to supervise and stop this fraud (*see* copies of these letters and receipts attached to the OC as Exhibit 4):

    37.1. on April 16, 2019, Jonathan Bourne (Auditor in Charge) via email delivery: jbourne@nexant.com;

    37.2. on April 17, 2019, Thomas Schneider (Licensed Audit Expert and Statutory Auditor) via email delivery: thomas.schneider@blkb.ch, kathrin.schneider@blkb.ch;

    37.3. on April 18, 2019, Isabelle Romy (UBS) via email delivery: iromy@froriep.ch;

    37.4. on April 23, 2019, Beatrice Weder di Mauro (UBS) via email delivery: bwederdimauro@cepr.org;

    37.5. on April 24, 2019, Sergio Ermotti (UBS) via email delivery: alexandra.mantovani@ubs.com;

    37.6. on April 30, 2019, Urs Kaegi (Bär & Karrer AG) via email delivery: urs.kaegi@baerkarrer.ch, diana.afzal@baerkarrer.ch;

    37.7. on May 2, 2019, Tom Naratil (UBS) via email delivery: marsha.askins@ubs.com, peter.stack@ubs.com, laura.hastings@ubs.com;

    37.8. on May 8, 2019, Bernard Sechaud (UBS) via hand delivery at UBS Annex, 31 East Bay Street, Nassau, The Bahamas.

38. We have not received any reply, and started to look for a lawyer and to prepare our complaint in the United States of America, which we did in October 2019.

    FACTS OF INTENTIONAL MISREPRESENTATION, CONCEALMENT AND OPPRESSION PRECEDENT THE DISCOVERY OF THE FRAUD

39. In July 2012, YIS were approached by George Maillis (GM), UBS Bahamas manager, who introduced himself as UBS investment advisor and offered a new "excellent" UBS product designed for active investors - traders. GM came to the YIS' home together with another UBS Bahamas officer Marsha Adderley (MA) and in a long detailed conversation described that through UBS facilities YIS will be able to trade any product, at any exchange in the world. YIS explained that they were interested only in the United States regulated markets, the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers Automated Quotations System ("NASDAQ") and Chicago Mercantile Exchange ( CME). GM also explained that the electronic platform was on the way but in the meantime the executions will be performed within seconds with orders placed on the phone. That was strange but not alarming.

40. GM left different brochures advertising the loan product and UBS trading facilities , and referred us to the internet sites in order to show us that the excellent service on The United States Exchanges was guaranteed.

41. We would never enter an agreement and put at risk our home if we knew that our trades will not have the privilege to have protection of the United States regulated exchanges.

42. YIS requested a meeting with Trade desc operatives and were assured that it would be shortly. Convinced that the agreement with UBS will unlock the possibility to trade on The United States regulated markets, through the facilities of one of the industry leaders, YIS in following weeks signed all documents and entered a five - years disastrous loan agreement, given as collateral our dwelling house, with the purpose to trade exclusively through UBS' Guiness Record trading facilities. The current account 32,377/01,00 of Junkanoo Estates Ltd. at UBS Bahamas ("account 32,377/01,00") was opened with the purpose of trading in October 2012.

43. The details of the loan agreement, UBS breaches of contract and service are described in B.A.B.A and are not subject of this litigation..

44. 4 October 2012 YIS met with GM at UBS luxury offices, in Nassau on Est Bay Street, which UBS owned and were presented with more brochures about exclusive facilities for trading in the The United States regulated markets and worldwide.

   44.1. YIS met Tibaud Halwyck (TH), introduced as lead trader at the local trade desk. The loan was already issued and the YIS were surprised,

       instead of the promised visit to the Trade Desk room and to meet head of the Trade Desk - Kevin Lee Price (KLP), an American expert, which was an additional reassurance of the quality of the service for which YIS reasonably could not have doubts, the meeting was held by TH in the presence of GM and it was discussed that YIS will trade Futures, ETFs and stocks on NYSE and CME.

45. The promised Electronic Platform (EP) was not made available, as well as Direct Market access. This seemed like negligence at that time , but as for today after discovery it is evident that those steps were taken by UBS intentionally, since it would make it impossible for the Fraud to exist.

    45.1. there are email exchanged between the plaintiffs and the representatives, as follows: George Maillis (226 emails sent to, 142 emails received from George.Maillis@ubs.com ); Jamaal Wright (133 emails sent to, 49 emails received from Jamaal.Wright@ubs.com); Lynette Martinborough (168 emails sent to, 51 emails received from Lynette.Martinborough@ubs.com ); and Marcia 'Marsha' Adderley (333 emails sent to, 112 emails received from Marsha.Adderley@ubs.com).

46. In May 2013 UBS refused YIS rights to trade futures , which also seemed strange at that time and only now can we surely link it to the intention to perform and conceive fraud.

47. Access to trading was denied due to numerous violations of UBS, which made it possible for YIS to place the first trade only in June 2013. The fees overcharge were our main concern and we did not insist on issuing COP, only mentioned to GM that we were waiting to receive them.

48. On 29 July 2013 YIS met with Kevin Lee Price (KLP) and MA, finally obtained confirmation of promised trades pricing and started to trade. It was discussed and argued that now YIS can trade on NYSE and NASDAQ. KLP promised best execution over the phone, since EP was not yet available and assured that all COP will be soon produced.

49. From July 2013 till 18 September 2013 YIS placed 252 trades. With many emails YIS complained about bad executions and demanded COP. It was absolutely hard to imagine that UBS has never executed orders on the The United States Exchanges and for this reason were intentionally creating delays.

50. During this period KLP was the highest person of referent, he was coordinating whole trading activity and his decisions were final for all issues - trading hours, instruments traded.

51. The intensity of the relationship grew worse as much as we YIS continued to demand best execution and production of COP. At the end of September 2013 UBS harshly halted trading, GM invited to a conversation. KLP made himself unavailable.

52. During the meeting on 8 October 2013 among other requests YIS strongly demanded the production of COP. At this point GM said that he would need leave from their legal office in order to produce COP. It was very strange, but yet YIS were not alarmed, believing that since it was such a big institution they may have some strange proceedings.

53. During the same meeting GM advised that UBS Bahamas sent the file in NYC, US and they were awaiting the opinion.

54. The solutions offered by YIS were such that any fair knowledgeable observer would find them reasonable. But on 12 November 2013 UBS by the letter signed by MA refused all proposals of YIS, and has not produced any COP. Instead, UBS pretended that the Account Balance should be brought up in order to unlock trading halt.

55. YIS were devastated with their trading halt to which their house were now tightened and impossibility to trade and pursue income. It is only later was possible to understand the root of such unreasonable and harsh behavior -  this harsh behavior was caused by YIS inadvertently tapping into the UBS fraudulent Fraud and it was taking  affirmative steps in order to conceal it from YIS and to prevent YIS discovery of both their claim and injury by disclosing to them only in October-November 2018 its internal records and documents.

56. On 20 December 2013 YIS called the head office UBS in Zurich, and spoke with Alessandra Mantovani, the assistant  of Sergio Ermotti CEO then. It was a great hope that since Sergiio Ermotti started his career as a trader, the situation will be resolved.  As an example of the lack of professionalism of the UBS Bahamas, YIS mentions the lack of COP for all these months. On the same day I sent the email-request (s*ee* Exhibit SE to this Complaint).

57. On 30 January 2014 YIS requested COP again and explained to FJ that the records provided by GM are not COP but simple UBS' accounting slips. FJ stated

      that since the meeting was to be settled soon they can discuss all aspects once met. (see exhibit FJ)

58. On 3 February 2014 we received an email from Sasha Savic, UBS Chief of Staff Latin America & Caribbean stating that " We have investigated this matter, and are satisfied that the Bank and its personnel have acted properly in relation to your matter and we cannot find any basis for your position." With this UBS AG verified the truth of false and misleading statements made by UBS Bahamas and George Maillis regarding the purchases and sales of securities in the United States (*see* Exhibit SU to this Complaint).

59. The meeting was settled for 12 March 2014, but suddenly on 28 February 2014 YIS received the letter from external lawyers of UBS – LPT demanding the immediate repayment of the entire loan (Demand Letter). Not a word about the refund or COP. This was again inexplicable if not another tool used to conceal the fraud and own wrongdoings.

60. On 7 March 2014 YIS a few days before the meeting with UBS announced in the local newspapers Nassau Guardian and the Tribune that they were "winding down the banking side of its operations over the next year" .

61. On 12 March 2013 during the meeting with UBS officers. For the first time Beat Paoletto was there, FJ and MA. And also was present Kathrym Feder, Cherise Cox Nottage. YIS were deeply stressed with the fact of the treatment they received. A number of unusual elements were at this meeting:

    61.1. the absence of traders , TH and KLP was surprising. Even GM was not present;

    61.2. when YIS asked for a promised COP from FJ he said that he have to leave and that he had never heard about this request;

    61.3. that was clearly misleading, but  it seemed the minor issue, the absence of very traders of the UBS.

62. During the meeting UBS apologized for the Demand Letter, and explained that the same was advised by their external lawyers. YIS thought that this maneuver was an attempt by LPT to oppress YIS since they have no defence for their second client - Credit Suisse and restitutionary claim of YIS. Only later, after

14

discovery it become evident that LPT and UBS took coordinate steps in order to hide the ongoing fraud.

63. On April 11, 2014 UBS Bahamas appropriated from the account 32,377/01,00 balance of (US$525,323.49) the UBS Bahamas. This was the amount left from the loan to YIS representing the difference between the account 32,377/01,00 balance as of September 28, 2012 (US$729,749.00).

64. I believe that since our trades were never executed on the NYSE or NASDAQ, the whole difference of the amounts of about US$204,425.51 should be refunded to YIS with interest, and without awarding UBS interests for the portion of loan YIS have used since -YIS would never enter the agreement if we were not defrauded with the promise to make our trades the U.S. regulated exchanges.

65. In May 2014 a lawyer acting pro bono for YIS at that time, sent a letter to UBS. The letter was partially answered in September 2013, but not addressing the COP.

66. In November 2014 unexpectedly UBS initiated litigation in the Bahamas, disregarding YIS requests to produce COP and to refund and make operative loan for the outstanding period.

67. On 23 December 2014 YIS were provided with the Affidavit of George Maillis. (*see* Exhibit GM) while omitting completely the existence of trading agreement, and not addressing any of YIS complaints.

68. On 23 March 2015 UBS obtained the order for possession of the home of YIS on summary judgment proceedings (which means without hearing in the Bahamas) which are prohibited in the Rules of the Supreme Court of the Bahamas. The LPT went as far as to lie to the honorable judge. All those efforts could be explained only with the malicious intention to cover up wrongdoings and oppress YIS.

69. On March 19, 2015, UBS Bahamas was liquidated by passing a resolution of one UBS AG's member, Beato Paoletto.

70. In 2015, UBS Bahamas' sold to the Government of the Bahamas its headquarters building at 31A East Bay Street, Nassau, New Providence, the Bahamas, for $22M or about (see SAC Exhibits T5 & T7). The building at 31A East Bay Street in Nassau is currently headquartered by the Securities Commission of the Bahamas the Deputy Chairman of the Board of which is Michael Paton, a partner of LPT.

71. YIS appealed the summary judgment order and the appeal was awaiting to be heard. Suddenly in May 2016 LPT moved to enforce Possession Order which was defined by the court to be interlocutory.

72. In September 2015 YIS filed a Writ of Summons against UBS in the Supreme Court of the Bahamas.

## CONCLUSIONS

I believe that it is a strong Public interest that this massive fraud will be stopped.

I also believe that considering the exceptional circumstances of this case, the international power of UBS, who acted willfully, with actual malice and with the intent to conceal discoverable evidence from us, must be punished not only by the order for restitution but also by award of punitive damages.

I also believe that as much as statute of limitation can offer protection to certain defendants, considering that YIS were affected by fraud, their life and their children is in a hard conditions for eight years, undue influence and overweening bargain power of UBS it should not be offered the court protection and shelter for its fraud.

I declare under penalty of perjury that the foregoing is true and correct.

SWORN to at New Providence, The Bahamas

on February 28, 2022

*[signature]*

Irina Tsareva *pro se*